UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ZENA KAY BURNS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-CV-00024-NCC |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Zena Kay Burns ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 14) and Defendant has filed a brief in support of the Answer (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on November 14, 2013, alleging an onset date of August 31, 2012 (Tr. 199-214). Plaintiff was initially denied on April 4, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on May 9, 2014 (Tr. 116-132, 136-137). After the hearing, by decision dated December 3, 2015, the ALJ found Plaintiff not

disabled (Tr. 10-33). On December 13, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ established that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016 (Tr. 15). The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 31, 2012, the alleged onset date (*Id.*). The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical, thoracic and lumbar spines, post-traumatic stress disorder (PTSD), depression, panic disorder with agoraphobia, and an anxiety disorder but that the ALJ determined that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).

After considering the entire record, the ALJ determined Plaintiff to have the residual functional capacity ("RFC") to perform less than a full range of light work[1] in that she can lift or carry 20 pounds occasionally and 10 pounds frequently (Tr. 18). She can stand or walk for 6 hours in an 8-hour workday (*Id.*). She can sit for 6 hours in an 8-hour workday (*Id.*). She can push or pull in the limits for lifting and carrying (*Id.*). She can understand, remember, and carry out simple work instructions and tasks at a Specific Vocational Preparation (SVP) 2 level[2] (*Id.*). She can have frequent contact with coworkers and supervisors (*Id.*). She can have occasional contact with the general public (*Id.*). The ALJ found Plaintiff is unable to perform any past

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[2] The SVP is the amount of time an individual needs to learn to do a job. SVP levels range from 1 to 9. An SVP level of 2 indicates that Plaintiff would need "anything beyond short demonstration up to and including 1 month" to learn a job. Dictionary of Occupational Titles, App'x C, 1991 WL 688702.

relevant work but that there are jobs that existed in significant numbers in the national economy that she could perform, including cleaner, laundry folder, and warehouse checker (Tr. 24-25). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 26). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises four issues. First, Plaintiff argues the ALJ failed to properly weigh the opinion of Plaintiff's treating primary care

physician, Dr. Carter P. Fenton, D.O (Doc. 14 at 5-10).[3] Second, Plaintiff asserts the ALJ erred in giving "great weight" to the state agency physician's statements (*Id.* at 7). Third, Plaintiff asserts the ALJ erred in finding that Plaintiff's renal cancer and urinary frequency were not severe impairments (*Id.* at 10-11). Fourth, Plaintiff argues that the ALJ erred in not finding Plaintiff met the requirements of listing 1.04 (*Id.* at 11-12). Because the ALJ erred in not finding Plaintiff's renal cancer and associated urinary frequency to be severe impairments, the Court will address this issue alone.

Plaintiff's asserts that the ALJ erred in not finding her renal cancer or her resulting urinary frequency to be severe impairments (*Id.* at 10-11). Specifically, Plaintiff argues that the limitations from Plaintiff's urinary frequency would limit her to sedentary activity, not light activity as determined by the ALJ (*Id.* at 11). Of note, the Defendant fails to address Plaintiff's argument (*See generally* Doc. 19). At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. While a claimant has the burden of showing a severe impairment that severely limits h physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

---

[3] While the Defendant does not explicitly concede that Dr. Fenton is Plaintiff's treating physician, Defendant does not argue otherwise, notes that Dr. Fenton is Plaintiff's "primary care physician," and cites to the appropriate treating physician regulations (Doc. 19 at 11). Accordingly, the Court will treat Dr. Fenton as Plaintiff's treating physician.

The ALJ determined that neither Plaintiff's renal cancer nor her resulting urinary frequency were severe impairments because he found them not to have more than a minimal effect on her ability to perform basic work related activities (Tr. 16). In so finding, the ALJ correctly noted that Plaintiff was diagnosed with renal cancer and underwent a partial nephrectomy of the right kidney in March 2014 (Tr. 16, 367, 387, 434-436). After the surgery, Plaintiff reported urinary frequency (Tr. 16, 473). However, the ALJ did not find these impairments to be severe because pathology reports indicated no cancer in the margins, no recurrence of the disease, and that her urinary frequency can be controlled by medication she was not taking (Tr. 16, 405, 471-472, 776-778).

The ALJ erred in not finding either Plaintiff's renal cancer or urinary frequency to be severe impairments. First, Plaintiff raised renal issues on her application, noting she suffers from renal oncocytoma[4] (Tr. 75, 254). *See cf. Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). During the hearing, her attorney modified her renal impairment to the following: "her status post renal cancer diagnosis in late 2013 and surgery in early 2014" and indicated that "[a]s a result of those medical problems [, including her renal cancer status among others] she has symptoms that affect her both mentally and physically" (Tr. 39). Counsel further specified that Plaintiff "had post-operative problems with frequent urination and problems with urgency" (Tr. 41). Regardless, the case analyses associated with Plaintiff's initial denial recognize the severity of Plaintiff's renal impairment, albeit incorrectly, by indicating that Plaintiff has the impairment of "bladder cancer" and noting that it is severe

---

[4] A glandular tumor composed of large cells. Stedmans Medical Dictionary, 625850.

(Tr. 82, 99). Indeed, on her initial denial, Plaintiff's primary diagnosis is listed as "malignant neoplasm of bladder" (Tr. 109-110).

Second, the record is replete with subjective complaints of urinary frequency. For example, Plaintiff testified that she started self-catheterization [5] the previous week (Tr. 54). Despite draining urine from her bladder one to three times a day, Plaintiff reported still needing to use the restroom at least ten times a day (Tr. 54-55). She also indicated that she was having accidents, including when picking up her 8-week old grandson (Tr. 55). Plaintiff also reported to her urologist, Dr. James Outman, that she was experiencing "blood in urine, burning urination, hesitancy, urgency, urinary incontinence, [and] urinary tract infections" (*See* Tr. 354). Similarly, Plaintiff described to Dr. Barry Burchett, M.D., a consultative examiner, "2 episodes per day of stress urinary incontinence" (Tr. 415).

Third, these subjective complaints are supported by objective medical evidence. Plaintiff's second urologist, Dr. Gregg Hallman, MD, diagnosed her with urinary frequency, urgency of urination, and urge incontinence and placed Plaintiff on a trial of medication (Tr. 473, 475). Dr. Hallman then reported that Plaintiff continued on the medication, which seemed to control the frequency but, due to his concerns that the medication was leading to increased residual and distention, he took her off of the medication and scheduled her from a cystoscopy, retrograde pyelography (Tr. 528-532). While the results of these exams were normal, Dr. Hallman continued to follow up frequently with Plaintiff (Tr. 523-524, 534). Further, Dr. Hallman tested Plaintiff for post void residual and found that Plaintiff had a catheterized sample of 200 ml (Tr. 779). Therefore, Dr. Hallman suggested that Plaintiff may need to be instructed

---

[5] Self-catheterization is the use of a catheter or tube to drain urine from a bladder. Self-catheterization-female, Medline Plus, https://medlineplus.gov/ency/patientinstructions/000144.htm (last visited Feb. 15, 2018).

8

on the technique of clean intermittent catheterization at her next appointment one month later if she had a post-void residual at that time of greater than 75 ml (*Id.*). Although the ALJ did not have access to records indicating the catheterization was indeed prescribed, Plaintiff's testimony indicates that Dr. Hallman went forward with his suggestion. *C.f. Hammond v. Apfel*, 5 F. App'x 101, 104 (4th Cir. 2001) (unpublished) (finding the ALJ did not err in determining claimant's urinary frequency not to be a severe impairment when it was not supported by objective medical evidence but only statements from physicians reporting claimant's subjective complaints and recommending claimant see a urologist).

Therefore, the medical record establishes that Plaintiff's renal cancer and resulting urinary frequency constituted "more than a minimal impact on her ability to work." *Caviness*, 250 F.3d at 605. Further, even if the Court were to accept that these impairments are non-severe, there is no indication that the ALJ considered these impairments when determining Plaintiff's RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at step two; further develop the

medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 6th day of March, 2018.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE